UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RYAN BARAN, etc., | CASE NO: 1:04CV 01759 |
| Plaintiffs | JUDGE CHRISTOPHER A. BOYKO |
| vs. | OPINION AND ORDER |
| JACK RENKES, et al., | |
| Defendants. | |

## CHRISTOPHER A. BOYKO, J.:

This matter comes before the Court upon the Motion (ECF DKT #43) of Defendant, Country Disposal, for Summary Judgment. For the reasons that follow, the Motion for Summary Judgment is denied

### I. FACTUAL BACKGROUND

Plaintiff Ryan Baran ("Baran"), by and through his parents, Thomas and Victoria Baran, as well as Thomas and Victoria Baran in their own right, have filed a negligence action against several defendants. The only remaining defendants in this action are Country Disposal and Windy Hills Golf Course and Campground ("Windy Hills"). Plaintiffs claim as the result of both defendants' negligence in keeping a dangerous trash dumpster close to a gravel road, Baran received serious injuries after hitting his face on the dumpster while riding his bicycle at night. Country Disposal has filed a Motion for Summary Judgment.

Over Labor Day weekend in 2002, the Barans went on a camping trip to Windy Hills. which was owned by Jack Renkes and his wife. Baran, who was nine at the time. came with his cousin and maternal grandparents in their recreational vehicle. They arrived on Friday, August 30, 2002. Baran's parents arrived two days later. Nobody in the party had ever been to Windy

Hills campground before.

The campsite where the Barans stayed is part of a larger campground arrangement which is arranged in a circle. In order to create the circle, the gravel roadway that leads into the campsite forms a "Y." Every year, before the camping season begins, Windy Hills moves the Country Disposal dumpster from its storage spot in a field into the "Y."

The dumpster was exclusively owned and serviced by Country Disposal. This servicing took place every Sunday between 2:00 and 3:00 a.m. There was no agreement between Windy Hills and Country Disposal as to where the dumpster would be placed after each of these servicings.

The dumpster was dark green and had a metal bar called a trunnion, about one and one-half inches thick, welded at the top front edge of the dumpster, which protruded horizontally about six to eight inches beyond each side of the dumpster. The trunnion is used by a garbage truck as an axis for pivoting when dumping the dumpster and to steady the dumpster against the rear opening of the truck. In order to dump refuse, the truck is backed up to the dumpster, then a hook is fastened onto a corresponding eye at the middle rear of the dumpster. When activated, a winch pulls the rear of the dumpster to the truck. The rear of the dumpster is then lifted and it pivots forward on the axis of the trunnion. Once the dumpster is emptied, the truck sets the dumpster back on the ground, the trunnion bar is disengaged, and the hook is desengaged from the eye on the back of the dumpster. The dumpster weighs between four hundred and five hundred pounds, and no individual could move it without mechanical assistance.

Jack Renke, the owner of Windy Hills at the time of the incident, admitted that children were "absolutely" welcome in the campground. The owners knew children rode their bicycles on and beside the gravel road, and in fact, the owners knew Baran himself had been riding his

bicycle with other children the entire weekend. The owner admits it was foreseeable that children would ride bicycles to a game room during the day and then return after dark.

The Baran family occupied a campsite at the ten o'clock position on the circle. The "Y" space where the dumpster was located was at the six o'clock position on the circle. Given the location of the Baran family campsite, Ryan Baran would have come up the gravel road and gone down the left arm of the "Y." Victoria Baran, Ryan Baran's mother, later recalled that she had noticed the dumpster was "very, very close" to the right edge of the "Y."

On Sunday, September 1, 2002, Baran and four other children rode their bicycles from the campsite to the campground's recreation center. They departed at about 8:30 p.m. Baran and his cousin left the arcade and started back to the campsite at about 9:30 p.m. By this time, it was dark and there were no lights around the "Y" where the dumpster was located. Baran remembers riding close to the right edge of the gravel road on the left arm of the "Y" in the road. He does not remember seeing the dumpster or the trunnion bar. Suddenly, Baran collided with the trunnion bar which stuck out from the left side of the dumpster. The bar struck him on the right side of his face directly below his right eye. Baran was knocked off of his bicycle and onto the gravel road. He recalled later that he could feel gravel under his tires the moment before he hit the trunnion bar.

Baran was severely injured and required several surgeries to repair his face. He has made a good recovery; however, there is still a visible deformity on his face.

## II. LAW AND ANALYSIS

### Standard of Review

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is not material unless it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An opponent of a motion for summary judgment may not rely on the mere allegations of the complaint, but must set forth specific facts showing a genuine issue for trial. *Id.* When no reasonable jury could return a verdict for the non-moving party, no genuine issue exists for trial. *Id.* However, in evaluating a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the non-moving party. *Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1097-98 (6th Cir. 1994).

**Premises liability law**

The Supreme Court of Ohio has stated that under premises liability "[o]ne having neither occupation nor control of premises ordinarily is under no legal duty to an invitee of another with respect to the condition or use of those premises." *Brown v. Cleveland Baseball Co.*, 158 Ohio St. 1 (1952). The Court held that in order to have the necessary occupation or control of premises, usually one must have the power and the right to admit or exclude individuals from the premises. *Id.* Ohio courts have applied this rule of law in a number of cases. *See Evans v. Whirlpool Corp.*, 6 Ohio App. 2d 211, 212 (6th Dist. 1966); *Hazel v. Fout*, 1974 Ohio App. LEXIS 3585, *5-6 (2nd Dist. 1974); and *Blasius v. Cuyahoga County Comm'rs*, 1996 Ohio App. LEXIS 2393, *5 (8th Dist. 1996).

Ohio courts have almost exclusively used the premises liability analysis in cases dealing with the relationship between lessors and lessees. *See Hazel, supra*; *Wills v. Frank Hoover Supply*, 26 Ohio St. 3d 186 (1986); and *Shump v. First Continental-Robinwood Assocs.*, 71 Ohio

St. 3d 414 (1994). All of these cases support the proposition that a lessor owes no duty of care to the invitees of the lessee as long as the lessor does not occupy or control the premises.

For example, in *Wills*, the Ohio Supreme Court held that a *"lessor* is not be liable for injuries to a third party in the absence of authority to exercise control over the premises to the exclusion of any control by the *lessee. Id.* at 188 (emphasis added). In *Wills*, a boy was injured by an oil well pump while on land being leased by the appellant lessor. The Court reversed the appellate court's reversal of summary judgment for the lessor because it found the lessee had exclusive control over the premises in question.

The present case differs from *Wills* and that line of cases because the relationship between Windy Hills and Country Disposal is not one of a lessor and a lessee. Country Disposal is an independent contractor which owns the dumpster and continuously services it on a weekly basis. Contrary to assertions by Country Disposal, the question here is not control of the premises, but whether either of the defendants created a dangerous condition.

Country Disposal cites to decisions where premises liability was applied in the absence of a lessor-lessee relationship; but, they are clearly distinguishable from the instant case. Country Disposal cites *Evans, supra*, to support its thesis that premises liability applies. In *Evans*, an employee of a city dump was severely injured by a caustic substance that splashed on his face. The substance was contained in a barrel which had been delivered to the dump by defendant Whirlpool. Citing a similar case decided by the Iowa Supreme Court, the Ohio appellate court held Whirlpool was not liable because it was not in control of the premises, *and* because it no longer had control nor the right to manage the material dumped. (*citing Cabrnosh v. Penick & Ford, Ltd., Inc.*, 218 Iowa 972 (1993)). The title to the containers and the substance had passed from the defendant to the city dump. In the instant case, title of the dumpster never passed from

Country Disposal to Windy Hills. Country Disposal continued to own the dumpster, service it, and had the power to move the dumpster, and did in fact move it, perhaps minimally, every time it emptied and serviced it.

Country Disposal also uses *Blasius, supra*, to support its position that premises liability should be used. In *Blasius*, the appellant was injured while entering a County building. She tripped because of missing bricks in the walkway. The appellant claimed Carbone, an independent contractor hired by the County Commissioners to do repair work which included the walkway, was negligent in failing to warn frequenters of the walkway of its dangerous condition. The court affirmed the trial court's grant of summary judgment because Carbone was not in control of the area where the appellant had fallen, and had not even begun working in that area. In the present case, however, the evidence shows that Country Disposal was in continuos control of the dumpster. The instant case is clearly distinguishable from *Blasius*.

Relevant precedent and the applicable facts of the instant case preclude the use of premises liability law to analyze the potential liability of Country Disposal. There was no lessor-lessee relationship between Country Disposal and Windy Hills; Country Disposal is an independent contractor; and Country Disposal arguably had some control over the dumpster.

Since premises liability does not apply, the question becomes whether Country Disposal's potential liability should be examined under general negligence law; and, if so, whether genuine issues of material fact exist.

Ohio courts have consistently held that independent contractors who create a dangerous condition on someone else's real property are governed by the laws of negligence. *Simmers v. Bentley Construction Co.*, 64 Ohio St. 3d 642, 645 (1992); *Lacey v. Sports Award, Inc.*, 2006 WL 2459094 at *7 (Ohio App. 2 Dist. 2006); *Hillier v. AVI Foodsystems, Inc.*, 2006 WL 496056

(Ohio App. 8 Dist. 2006). The Second District Court of Appeals for Ohio stated, "[i]t is now the almost universal rule that the contractor is liable to all those who may foreseeably be injured by the [dangerous condition], not only when he fails to disclose dangerous conditions known to him, but also when the work is negligently done." *Jackson v. Franklin*, 51 Ohio App. 3d 51, 53 (2nd Dist. 1988). Since Country Disposal is an independent contractor for Windy Hills, it is clear that the negligence standard should be applied to Country Disposal's conduct.

Plaintiffs use *Simmers* almost exclusively to support their proposition that general negligence should apply to Country Disposal. While that case is not exactly on point, it does support the general proposition that independent contractors who create a dangerous condition should be subject to general negligence standards. *Simmers*, 64 Ohio St. 3d at 645. The court in *Simmers* concentrated upon the "open and obvious" doctrine; however, it did hold "an independent contractor who creates a dangerous condition on real property is not relieved of liability under the [open and obvious] doctrine which exonerates an owner or occupier of land from the duty to warn those entering the property concerning open and obvious dangers on the property." *Id.*

Since Country Disposal's potential liability should be examined under general negligence law, the summary judgment analysis turns to the existence of any genuine issues of material fact. The elements of negligence are duty, a breach of that duty, and proximate cause. *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989). There are genuine issues of material fact as to whether Country Disposal had a duty to the plaintiff, Ryan Baran, and whether it breached that duty. There are also questions as to the proximate cause of Baran's injuries.

Under negligence law, "a defendant's duty to a plaintiff depends upon the relationship between the parties and the foreseeability of injury to someone in the plaintiff's position."

*Simmers*, 64 Ohio St. 3d at 645. Furthermore, "injury is foreseeable if a defendant knew or should have known that its act was likely to result in harm to someone." *Id.* There are genuine issues of fact as to whether Plaintiff's injuries would have been foreseeable to Country Disposal. Plaintiffs' could reasonably argue Country Disposal should have known placing a dumpster with two protruding metal bars would likely cause harm, especially since there were no reflectors on the bars, and the dark green dumpster was hardly discernible at night.

There are also genuine issues of material fact as to whether Country Disposal breached its duty of care. Evidence suggests Country Disposal could have, and sometimes did, move the dumpster every week when it serviced it. In fact, the dumpster could have been moved up to several feet at each servicing. And also, the absence of reflectors on the metal bars raises the question whether there was adequate warning of the hazard. These issues of material fact should be decided by the jury.

Finally, genuine issues of material fact exist as to the proximate cause of Baran's injuries. Proximate cause is "limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing a liability." *Hester v. Dwivedi*, 89 Ohio St. 3d 575, 581 (2000). Baran claims he felt gravel under his bicycle tires just before he collided with the trunnion bar, which lends credence to the argument the dumpster was so close to the road as to be dangerous. However, pictures of the "Y" and the dumpster are inconclusive as to how close the dumpster really could have been to the road. These questions of proximate cause are best left to the jury.

### III. CONCLUSION

The law of general negligence should be applied in analyzing Country Disposal's liability to Plaintiff. Premises liability law does not apply because the relationship between Windy Hills

and Country Disposal was not one of a lessor and a lessee, and Country Disposal had continuing control over the dumpster and arguably, its placement. Under a general negligence analysis, there are genuine issues of material fact as to whether Country Disposal owed a duty, whether it breached that duty, and whether the breach proximately caused Baran's injury. Therefore, Country Disposal's Motion for Summary Judgment is denied.

**IT IS SO ORDERED.**

DATE: 10/6/06

_____
**CHRISTOPHER A. BOYKO**
**United States District Judge**